CHRIS. F. MYNNING, ADMINISTRATOR OF THE ESTATE OF
PHILLIP A. MYNNING, DECEASED, V. THE DETROIT,
LANSING & NORTHERN RAILROAD
COMPANY.

| | |
|---|---|
| 67 | 677 |
| 78 | 277 |
| 67 | 677 |
| 90 | 604 |
| 67 | 677 |
| 94 | 595 |
| 67 | 677 |
| 114 | 87 |
| 67 | 677 |
| 115 | 72 |
| 67 | 677 |
| 124 | 541 |

[See 59 Mich. 257; 64 Id. 93.]

*Contributory negligence—Decision of Supreme Court—Charge to
jury.*

1. When this Court has declared the law of a case, the rule of law
   laid down in the decision of the cause remains the law, to be
   applied upon the same state of facts in all the subsequent pro-
   ceedings in the cause.

2. Where the whole testimony in a case, and all legitimate inferences
   that can be drawn therefrom, shows that the plaintiff's intestate
   was injured by reason of his own want of ordinary care, the
   question whether there was or was not negligence on the part
   of the injured party is a question of law, to be decided by the
   court.

3. In an action to recover damages sustained by reason of defend-
   ant's negligence, the burden of proof is upon the plaintiff to
   show—
       *a.* That the injured party was in the exercise of ordinary care
   at the time he was injured.
       *b.* That the injury was the result of defendant's negligence.

4. In an action based upon negligence, it is error for the trial court
   to instruct the jury, upon the question of the contributory negli-
   gence of the injured person, that "if any reasonable mind can
   come to a different conclusion than that the plaintiff was guilty
   of negligence, if there is any doubt upon the subject, or a rea-
   sonable mind can form an opposite opinion, instead of that he
   was guilty of negligence, then it would be for them to deliberate
   upon the testimony, and ascertain if, from all of it, they can
   come to the conclusion that the plaintiff was not guilty of con-
   tributory negligence, and hence ought to recover."

5. It is error for the trial court to charge the jury, respecting tes-
   timony which the defendant claimed conclusively showed that
   the deceased did not exercise ordinary care, that such "testi-
   mony must be such as to drive you to that conclusion,—to pre-
   vent your arriving at any other conclusion." [1]

---

[1] Head-notes prepared by CHAMPLIN, J.

Error to Mecosta.   (Fuller, J.)    Argued November 2 and 3, 1887.   Decided January 5, 1888.

Case.   Defendant brings error.   Reversed, and no new trial ordered.   The facts are stated in the opinion.

*Palmer & Palmer,* for appellant.

*Andrew Hanson* (*J. C. FitzGerald,* of counsel), for plaintiff.

CHAMPLIN, J.   When this case was before us the first time, upon the testimony introduced on the part of the plaintiff, we held that the question of decedent's contributory negligence was not free from doubt, and that the court did right in submitting the case to the jury.   *Mynning v. D. L. & N. R. R. Co.,* 59 Mich. 259.

When the case came before us again, we held that, by the plaintiff's own showing, the deceased was chargeable with such contributory negligence as precluded a recovery (*Mynning v. D. L. & N. R. R. Co.,* 64 Mich. 93), and the case was sent back for a new trial.

Ordinarily, where the plaintiff has failed to make a case by reason of its affirmatively appearing that the deceased was himself guilty of contributory negligence, a new trial is not ordered ; but it appeared in the record in this case that another person, by the name of Coburn, witnessed the catastrophe, who was not called as a witness, and whose testimony might possibly have aided plaintiff in showing due care on the part of the deceased, and therefore we ordered a new trial.

Upon the last trial, this person was not called as a witness, and it may be presumed, either that his attendance could not be procured, or that his testimony would not shed any new light upon the transaction.

The case has again been tried upon substantially the same testimony as that which came under our review in the last

trial, and has resulted in a verdict for the plaintiff. When the case was here last, we laid down the rule of law that must control the decision upon the facts then appearing upon the record before us. So long as the facts remain the same, the rule of law applied by this Court in the decision of the cause remains the law of the case in all subsequent proceedings therein.

It appears from the record before us that, upon the last trial in the court below, a stipulation was entered into between the parties as follows:

"No witnesses to be sworn on the coming trial of this cause except those which were sworn on the last trial; and either party may read such of the testimony given upon said last trial, as reported by the stenographer, as he may desire."

Under this stipulation, the plaintiff's attorney read in evidence to the jury such of the testimony given upon the trial of the case as he desired. He refused to read to the jury the testimony of the witness McLaughlin, mentioned in the opinion when the case was last here. Thereupon counsel for defendant offered to read the testimony of this witness as testimony in plaintiff's behalf. The plaintiff objected, and the court ruled that defendant might read the testimony of any witness in his own behalf, but he could not introduce it as the testimony of the plaintiff's witness. The defendant's counsel excepted to the ruling, and then read the testimony of the witness McLaughlin in evidence.

The ruling was in accordance with the stipulation. Plaintiff's attorney complained, upon the trial in which the witness McLaughlin testified, that he was surprised at the testimony given by him, and intimated that he had been deceived by the witness.

The witnesses Trafford and Wakeman were sworn and examined on the behalf of the plaintiff. Their testimony was not materially variant from that given on the preceding trial. They testified as before to seeing the train approaching from

the north; to seeing the deceased approaching the crossing, and coming towards them; that their eyes did not leave him from the time they first saw him, when he was within about 30 feet of the railroad crossing, until he stepped upon the track, and was struck by the train; that he was walking fast, his head down; and that they did not see him stop, or look towards the approaching train, and that they were looking at him the whole time.

The only legitimate inference that can be drawn from their testimony is that Mynning was aware of the approaching train, and purposely went in front of it; or, which is more probable, that he was unaware of its proximity, and without paying attention, or giving the subject a thought, without taking any caution whatever, carelessly and negligently pursued his way, and in consequence was hit by the train and killed.

We have before us upon this record the same testimony and the same facts established that were present in the record when the case was last before us, and, unless we erred in that opinion, the decision in that case must rule this.

This is not a case where there was no living witness of the accident; consequently there is no room for the presumption, arising from the natural instinct of self-preservation, that the deceased was exercising due care to preserve his life or person from injury. Here there is no conflicting testimony upon the question of the contributory negligence of Mr. Mynning. There is no conflict between the testimony of Trafford and Wakeman, introduced by the plaintiff, and that of McLaughlin, introduced by the defendant. There is perfect harmony between them, and, if the testimony of McLaughlin is laid entirely out of view, or disbelieved, the plaintiff's case is not improved, nor contributory negligence disproved.

Giving full faith and credit to the testimony introduced for the purpose of proving that the deceased was in the

exercise of ordinary care at the time of the accident, and giving to the plaintiff the benefit of all legitimate inference to be drawn from such testimony, it becomes a question of law, for the trial court to determine, whether the testimony, conceding its truth, established the fact that Mr. Mynning was in the exercise of ordinary care. Upon this question, acting upon the testimony given in this case upon the last and preceding trial of the cause in the court below, there was no room for unbiased, reasonable minds to come to a different conclusion than that Mr. Mynning was not in the exercise of ordinary care in approaching and entering upon the railroad crossing in question.

It is needless to recapitulate the testimony. We did so in the opinion filed when the case was here last, and the testimony is no different now from what it was then.

The defendant's counsel requested the court to instruct the jury that, under the evidence in the case, the plaintiff was not entitled to recover, which the court refused. This request raised the question of law, and it was the duty of the court to pass upon it. He refused to so instruct the jury, but, on the contrary, gave them the following instructions, which, to say the least, are certainly unique.

After reading to the jury from the opinion of this Court a statement of the facts, from which we held that, as a question of law, the defendant was not liable, because of the want of ordinary care of Mr. Mynning, he said:

" Now, gentlemen, if you should find the testimony in this case to correspond with what has been read to you as narrated by Justice CHAMPLIN, in delivering this opinion, then you must come to the conclusion that the deceased was guilty of contributory negligence, and you must find against the plaintiff and for the defendant.

."If, on the other hand, you should find that the testimony changed, or that any reasonable mind can come to any different conclusion than that the plaintiff was guilty of negligence, if there is any doubt on the subject, or a reasonable mind can form an opposite opinion, instead of the one which is stated here, and which the court has stated to you, then it would be for you to deliberate on this testimony, and

ascertain if, from all of it, you can come to the conclusion that the plaintiff was not guilty of contributory negligence, and hence ought to recover."

The jury are not only told that they are at liberty to come to a different conclusion upon the law of the case than that at which this Court arrived, but he puts the question of contributory negligence to them as if the burden of proof was upon the defendant to show contributory negligence, and that it must be shown beyond a reasonable doubt; instead of telling them that the burden of showing that the plaintiff's intestate ·was exercising due care, and did not contribute to the injury by his own negligence or want of care, was upon the plaintiff. And this error is further emphasized in the concluding sentence of the following portion of this charge:

"It is claimed that there is testimony which conclusively shows that the deceased did not use ordinary care. If you find that to be the fact, if you find from the testimony that Mr. Mynning, the deceased, walked upon the railroad track knowing it to be there, and finding from the testimony that he was familiar with the surroundings, and knew that the track existed, which is of itself a notice of danger,—a railroad track being a notice of danger in itself,—I say, if you should find that he was familiar with the premises, and knew that track existed, and he walked upon the track, pay-· ing no attention to its existence,—went there blindly, with his head down, and treating the highway as being continuous, without any railroad track crossing it at all, and paying no attention to anything,—then you should find a verdict for defendant of no cause of action. And this testimony must be such as to drive you to that conclusion,—to prevent your arriving at any other conclusion."

Further comment is unnecessary. The law laid down by the court in these portions of his charge was wrong, ·and would call for a reversal of the judgment were the other point to which attention has been called not conclusive.

The judgment is reversed.

As it is not probable that a different case can be made upon another trial, one will not be ordered.

SHERWOOD and MORSE, JJ., concurred.

CAMPBELL, C. J., did not sit.